1  Jack Silver, Esq. SB #160575
   LAW OFFICE OF JACK SILVER
2  708 Gravenstein Hwy. North. # 407
   Sebastopol, CA 95472-2808
3  Tel.(707) 528-8175
   Email: JSilverEnvironmental@gmail.com
4
   David J. Weinsoff, Esq. SB #141372
5  LAW OFFICE OF DAVID J. WEINSOFF
   138 Ridgeway Avenue
6  Fairfax, CA 94930
   Tel. (415) 460-9760
7  Email: david@weinsofflaw.com

8  Attorneys for Plaintiff
   CALIFORNIA RIVER WATCH
9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12 CALIFORNIA RIVER WATCH, an          Case No.:    '18CV1635 AJB  JMA
   IRC Section 501(c)(3), non-profit,
13 public benefit Corporation,          **COMPLAINT FOR INJUNCTIVE
                                        RELIEF, CIVIL PENALTIES,
14              Plaintiff,              AND DECLARATORY RELIEF**
        v.
15                                      **(Environmental - Clean Water Act
   CITY OF ESCONDIDO,                   33 U.S.C. § 1251 *et seq.*)**
16
                Defendant.
17 _____/

18       Plaintiff CALIFORNIA RIVER WATCH ("RIVER WATCH") hereby brings this

19 civil action pursuant to the Federal Water Pollution Control Act, also known as the Clean

20 Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*

21 **I.    INTRODUCTION**

22 1.      This action is a citizens' suit for injunctive relief, civil penalties, and remediation

23 brought against Defendant CITY OF ESCONDIDO (the "CITY") for routinely violating

24 an effluent quality standard or limitation[1] by discharging a pollutant from a point source

25 to a water of the United States without complying with any other sections of the Act

26 _____

27 [1]See CWA § 505(a)(1)(A), (B), 33 U.S.C. 1365(a)(1)(A), (B). "[A]ny citizen may commence
   a civil action on his own behalf against any person . . . who is alleged to be in violation of (A)
   an effluent standard or limitation under this Act or (B) an order issued by the Administrator or
28 a State with respect to such a standard or limitation."

including CWA § 402, 33 U.S.C. § 1342.

2.      On or about January 12, 2018, RIVER WATCH provided notice of the CITY's violations of the CWA to the (1) Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State Water Resources Control Board, and (4) THE CITY as required by CWA 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of RIVER WATCH's 60-Day Notice of Violations ("Notice") is attached as **EXHIBIT A** and incorporated by reference. The CITY, the State Board, and the Regional and National Administrators of EPA all received this Notice.

3.      More than sixty days have passed since RIVER WATCH's Notice was served on the CITY, the State Board, and the Regional and National EPA Administrators. RIVER WATCH is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under section 309(g) of the CWA, 33 U.S.C. § 1319(g).

**II.     JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C.§ 1365(a) (CWA citizen suit jurisdiction).  The relief requested is authorized pursuant to 28 U.S.C. §§  2201-2202 (declaratory relief), 33 U.S.C. § 1365(a) (injunctive relief), and 33 U.S.C. § 1319(d) (civil penalties).

5.      Venue is proper because the CITY and its discharging collection system are located, and the events or omissions giving rise to RIVER WATCH's claims occurred, in this District. 28 U.S.C. § 1391(b)(1), (2). Venue is also proper because the CITY's CWA violations have occurred and are occurring within the District. 33 U.S.C. § 1365(c)(1).

//

//

### III.   PARTIES

6.     RIVER WATCH, is, and at all times relevant to this Complaint was, an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California with headquarters located in Sebastopol, California. The mailing address of RIVER WATCH is 290 South Main Street, #817, Sebastopol, California.  RIVER WATCH is dedicated to protecting, enhancing, and helping to restore surface water and groundwaters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and educating the public concerning environmental issues associated with these environs.  Members of RIVER WATCH have interests in the waters and watersheds which are or may be adversely affected by the CITY's discharges and violations of the CWA as alleged in this Complaint. Said members use or and intend to use in the future the effected waters and watershed areas for recreation, sports, fishing, swimming, hiking, photography and nature walks.  Furthermore, the relief sought will redress the injury in fact, likelihood of future injury, and interference with the interests of said members.  The CITY's ongoing violations of the CWA will cause irreparable harm to members of RIVER WATCH for which they have no plain, speedy, or adequate remedy. The relief requested will redress the ongoing injury in fact to RIVER WATCH's members.

7.     RIVER WATCH is informed and believes, and on such information and belief alleges, that Defendant CITY is now, and at all times relevant to this Complaint was, a municipality formed under the laws of the State of California, with administrative offices located at 201 North Broadway, Escondido, California.

### IV.   FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS

8.     RIVER WATCH incorporates by reference all the foregoing including **EXHIBIT A** as though the same were separately set forth herein.  RIVER WATCH takes this action to ensure compliance with the CWA, which regulates the discharge of pollutants into navigable waters.  The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions. One such exception

authorizes a discharger, who has been issued a permit pursuant to CWA § 402, 33 U.S.C. § 1342, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a National Pollutant Discharge Elimination System ("NPDES") permit define the scope of the authorized exception to the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition, such that violation of a permit limit places a discharger in violation of the CWA.

9.     The CWA provides that authority to administer the NPDES permitting system in any given state or region can be delegated by the EPA to a state or to a regional regulatory agency, provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (*see* CWA § 402(b), 33 U.S.C. § 1342(b)).  In California, the EPA has granted authorization to issue NPDES permits to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards.  The entity responsible for issuing NPDES permits and otherwise regulating the CITY's operations in the region at issue in this Complaint is the Regional Water Quality Control Board, San Diego Region ("RWQCB").

10.     While delegating authority to administer the NPDES permitting system, the CWA provides that enforcement of permitting requirements under the statute relating to effluent standards or limitations imposed by the Regional Water Quality Control Boards can be ensured by private parties acting under the citizen suit provision of the statute (*see* CWA § 505, 33 U.S.C. § 1365).  RIVER WATCH is exercising such citizen enforcement to enforce compliance by the CITY with the CWA.

11.     RIVER WATCH has identified  discharges of sewage from the CITY's sewage collection system to waters of the United States in violation of CWA § 301(a), 33 U.S.C. 1311(a), which states in relevant part, "Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316, 1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be unlawful."

12.    RIVER WATCH has also identified numerous violations of orders issued by the State with respect to a standard or limitation (*see* CWA § 505(a), 33 U.S.C. 1365(a)), specifically:

- Order No. R9-2015-0026, NPDES No. CA0108944, *"Waste Discharge Requirements For The City Of Escondido, Hale Avenue Resource Recovery Facility, Intermittent Wet Weather Discharge To Escondido Creek, San Diego County,"* of which the CITY is the permittee ("Facility Permit").  The Facility Permit states in relevant part:

    - "Discharges of wastes in a manner or to a location which have not been specifically authorized and for which valid WDRs are not in force is prohibited" (*see* Section III.B. "Discharge Prohibitions").

    - "The bypass or overflow of untreated wastewater or wastes to surface waters or surface water drainage courses is prohibited, except as allowed in Standard Provision I.G. of Attachment D, Standard Provisions (*see* Section III.D. "Discharge Prohibitions").

- Order No. R9-2013-0001 NPDES. No. CAS0109266, *"National Pollutant Discharge Elimination System (NPDES) Permit And Waste Discharge Requirements For Discharges From Municipal Separate Storm Sewer Systems (MS4s) Draining The Watersheds Within The San Diego Region,"* of which the CITY is currently a co-permittee. ("MS4 Permit").  The MS4 Permit states in relevant part:

    - "Discharges from MS4s in a manner causing, or threatening to cause, a condition of pollution, contamination, or nuisance in receiving waters of the state are prohibited" (*see* Section II.A.1.a. "Discharge Prohibitions").

    - "Non-storm water discharges into MS4s are to be effectively prohibited, through the implementation of Provision E.2, unless such discharges are authorized by a separate NPDES permit" (*see* Section II.A.1.b. "Discharge Prohibitions").

- "Discharges from MS4s are subject to all waste discharge prohibitions in the Basin Plan, included in Attachment A to this Order" (*see* Section II.A.1.c. "Discharge Prohibitions").

- "a. Discharges from MS4s must not cause or contribute to the violation of water quality standards in any receiving waters, including but not limited to all applicable provisions contained in:

   1. The San Diego Water Board's Basin Plan, including beneficial uses, water quality objectives, and implementation plans;

   2. State Water Boards plans for water quality control including the following:

      (a) Water Quality Control Plan for Control of Temperature in the Coastal and Interstate Waters and Enclosed Bays and Estuaries (Thermal Plan), and

      (b) The Ocean Plan, including beneficial uses, water quality objectives, and implementation plans;

   3. State Water Board policies for water and sediment quality control including the following:

      (a) Water Quality Control Policy for the Enclosed Bays and Estuaries of California,

      (b) Sediment Quality Control Plan which includes the following narrative objectives for bays and estuaries:

         (i) Pollutants in sediments shall not be present in quantities that, alone or in combination, are toxic to benthic communities, and

         (ii) Pollutants shall not be present in sediments at levels that will bioaccumulate in aquatic life to levels that are harmful for human health,

(c)     The Statement of Policy with Respect to Maintaining High Quality of Waters in California;

4.     Priority pollutant criteria promulgated by the U.S. EPA through the following:

(a)     National Toxics Rule (NTR) (promulgated on December 22, 1992, and amended on May 4, 1995), and

(b)     California Toxics Rule (CTR).

5.     Discharges from MS4s composed of storm water runoff must not alter ocean water quality in an ASBS [Areas of Special Biological Significance]" (*see* Section II.A.2. "Receiving Water Limitations," *footnotes omitted*).

In practice, the discharge of any sewer system overflow to any storm drain system or watercourse under the CITY's jurisdiction violates this subsection of the CITY's MS4 Permit.

13.     In its CWA Notice, RIVER WATCH contends that for the period January 12, 2013 to January 12, 2018, the CITY has violated the Act as described in this Complaint. Further that the CITY has violated the requirements of the Facility Permit and the MS4 Permit identified in Paragraph 12 with respect to its sewage collection system and municipal storm sewer system.   RIVER WATCH contends these violations are continuing or have a likelihood of occurring in the future:

a.     Collection System Discharges Caused by Underground Exfiltration.  It is a well-established fact that exfiltration caused by pipeline cracks and other structural defects in a sewage collection system result in discharges to adjacent surface waters via underground hydrological connections. RIVER WATCH contends untreated sewage is discharged from cracks, displaced joints, eroded segments, etc., in the CITY's sewer collection system into groundwater hydrologically connected to surface waters including, but not limited to, Escondido Creek, Kit Carson Creek, San Elijo Lagoon and Estuary, and Lake Hodges.  Surface waters become contaminated with pollutants including

1  human pathogens. The EPA has found that failures in the sewage collection system pose

2  a substantial threat to public health.

3  Studies tracing human markers specific to the human digestive system in surface

4  waters adjacent to defective sewer lines in other systems have verified the contamination

5  of the adjacent waters with untreated sewage.  Evidence of exfiltration can also be

6  supported by reviewing mass balance data, "inflow and infiltration" ("I/I") data, video

7  inspection, as well as tests of waterways adjacent to sewer lines for nutrients, human

8  pathogens, and other human markers such as caffeine.  Any exfiltration found from the

9  CITY is a violation of the Facility Permit and thus the CWA.

10  b.  Collection System Surface Discharges Caused by Sanitary Sewer Overflows.

11  Sanitary sewer overflows ("SSOs"), in which untreated sewage is discharged above

12  ground from the sewage collection system prior to reaching the Hale Avenue Resource

13  Recovery Facility ("Facility"), are alleged to have occurred both on the dates reported

14  by the CITY and identified in the California Integrated Water Quality System

15  ("CIWQS") Interactive Public SSO Reports, and on dates when no reports were filed by

16  the CITY, all in violation of the Facility Permit, the  MS4 Permit, and the CWA.  The

17  following listed violations are reported by the RWQCB and evidenced by the CIWQS

18  SSO Reporting Program Database Records.  As listed in CIWQS current to the date of

19  the filing of this Complaint, the "Event IDs" of violations date for the period February

20  27, 2013 to January 12, 2018 are: 792215, 792433, 793042, 799851, 799887, 800800,

21  808100, 808215, 810586, 811438, 813886, 815978, 816842, 818349, 820226, 820925,

22  822320, 822632, 828508, 833488, 835005, 835495, 840808, 841267, 844347, 844711.

23  All identified discharges are violations of CWA 301(a), 33 U.S.C. 1311(a), as they

24  are discharges of a pollutant (sewage) from a point source (sewage collection system)

25  to a water of the United States without complying with any other sections of the Act.

26  14.  The CITY's aging collection system has historically experienced high I/I during

27  wet weather.  Structural defects which allow I/I into the sewer lines result in a buildup

28  of pressure causing SSOs.  Overflows caused by blockages and I/I result in the discharge

of raw sewage into gutters, canals, and storm drains connected to adjacent surface waters such as Escondido Creek, Kit Carson Creek, San Elijo Lagoon and Estuary, and Lake Hodges – all waters of the United States.

15. As recorded in the CIWQS Spill Public Report – Summary Page, the "Total Number of SSO locations" is 44, with 329,470 "Total Vol. of SSOs (gal)" discharged into the environment. Of this total volume, the CITY admits at least 299,897 gallons, or 91% of the total, reached a surface water. These discharges pose both a nuisance pursuant to California Water Code § 13050(m) and an imminent and substantial endangerment to public health and the environment. Included in the Notice are three (3) examples of the SSOs listed in CIWQS and identified in Paragraph 13.b. above:

- October 15, 2017 (Event ID# 840808) – an SSO estimated at 59,331 gallons occurred at Sears Automotive Air Vac as a result of an air Relief Valve/Blow-Off Valve failure which caused 54,831 gallons of sewage to be spilled into Kit Carson Creek. Of the estimated amount, 4,500 gallons of sewage were recovered.

- June 20, 2015 (Event ID # 815978) – an SSO estimated at 50 gallons occurred at 2415 Eucalyptus Street caused by a pipe structural problem or failure. None of the sewage was recovered; all of the 50 gallons discharged into Lake Hodges via a storm channel.

- March 29, 2013 (Event ID # 793042) – an SSO estimated at 300 gallons occurred at 1487 Industrial Avenue as the result of a water main failure; 250 gallons were reported as recovered and 50 gallons of sewage reached Escondido Creek via a storm drain.

RIVER WATCH contends these violations are continuing in nature or have a likelihood of occurring in the future. Further, while some SSOs occurred in areas which were dry at the time of the spill, the discharged pollutants remained on the surface of the land and entered receiving waters following rainfall or flooding.

16. RIVER WATCH is further informed and believes, and on such information and belief alleges, that the CITY's SSO Reports, which would reveal critical details about each of these SSOs, lack responses to specific questions that would present sufficient information to accurately assess and ensure these violations would not recur. Further, although the CITY posts warning signs for some of its SSOs reaching a surface water, RIVER WATCH contends the CITY is understating the significance of the impacts of

its CWA violations by failing to post health warning signs for all SSOs which pose an imminent and substantial endangerment to health or the environment regardless of location.

17.     RIVER WATCH contends that many of the SSOs reported by the CITY as not reaching a surface water did in fact reach surface waters, and that those reported as reaching a surface water did so in greater volume than stated.  A careful reading of the time when the SSO began, the time the CITY received notification of the SSO, the time of its response, and the time at which the SSO ended too often appear as unlikely estimations.  Included in the Notice are three (3) examples of the SSOs listed in CIWQS and identified in Paragraph 13.b. above:

- February 27, 2016 (Event ID #822320) – the spill start time and agency notification time are both reported as 07:53 am, but the operator arrival time and spill end time are not reported.  The estimated volume of the spill is reported as 6,790 gallons, all of which are reported as being recovered.

- December 16, 2015 (Event ID #820226) – the spill start time and agency notification time are both reported as 10:30 am, but the operator arrival time and estimated spill end time are not reported. The estimated total spill volume is estimated at 1,125. Out of the total spill volume, 1,000 gallons are reported as being recovered and 1,125 gallons are reported as reaching land.

- March 13, 2015 (Event ID #813886) – the spill start time is reported as 04:00 pm and agency notification time is reported as 04:10 pm.   The operator arrival time and estimated spill end time are not reported. The total spill volume is reported as 300 gallons, 200 gallons of which are reported as being recovered.  The remaining 100 gallons are not reported.

Given the unlikely accuracy of the events provided in these reports, it is difficult to consider the stated volumes as accurate.  Many of the CITY's SSO reports list the spill start and agency notification times as exactly the same time. Without correctly reporting the spill start and end time, there is a danger that the duration and volume of a spill will be underestimated.

18.     The CITY also fails to adequately mitigate the impacts of SSOs.  The CITY is a permittee under the *Statewide General Requirements for Sanitary Sewer Systems,* Waste Discharge Requirements Order No. 2006-003-DWQ ("Statewide WDR"), and *Waste Discharge Requirements For Sewage Collection Agencies In The San Diego Region,*

Waste Discharge Requirements Order No. R-9-2007-0005 ("San Diego Region WDR"), governing the operation of sanitary sewer systems.  The Statewide WDR and the San Diego Region WDR mandate that the permittee shall take all feasible steps to contain and mitigate the impacts of an SSO.  The EPA's "*Report to Congress on the Impacts and Control of CSOs and SSOs*" (U.S. Environmental Protection Agency, Office of Water (2004)) identifies SSOs as a major source of microbial pathogens and oxygen depleting substances.  Numerous critical habitat areas exist within the areas of the CITY's SSOs. There is no record of the CITY performing any analysis of the impact of SSOs on critical habitat of protected species under the federal Endangered Species Act, nor any evaluation of the measures needed to restore water bodies designated as critical habitat from the impacts of SSOs.

19.    The two Waste Discharge Requirement Orders require the CITY to take all feasible steps, and perform necessary remedial actions following the occurrence of an SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible.  Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the sewage collection system to prevent further SSOs at the site.  One of the most important remedial measures is the performance of adequate sampling to determine the nature and the impact of the release. As the CITY is severely underestimating SSOs which reach surface waters, RIVER WATCH contends the CITY is also not conducting sampling on most SSOs.

20.    The CITY's sewage collection system includes the wastewater collection system and the Escondido Land Outfall pipeline carrying effluent from the Hale Avenue Resource Recovery Facility, located at 1521 S. Hale Avenue, to the San Elijo Ocean Outfall.

21.    The CITY's sewage collection system consists of approximately 380 miles of pipeline, 7,530 manholes, and 14 pump stations. The system serves an estimated population of 146,000. The sewage collection system delivers wastewater to the Facility.

With minor exceptions, the sewage collection system serves only properties within the incorporated boundaries of the CITY. The Facility is a conventional activated sludge secondary treatment plant. The Facility's biosolids are digested, dewatered with three centrifuges, hauled to a private farm, and applied to land as a soil amendment. The Facility's effluent is released to the Escondido Land Outfall for delivery, and discharged to the San Elijo Ocean Outfall. An equalization basin is available to equalize peak flows.

22.    The Escondido Land Outfall is a 14.3-mile-long pipeline with varying internal diameters from 30" to 36". The pipeline operates under gravity flow conditions from the Facility, roughly paralleling Escondido Creek, to a point near Lone Jack Road in Olivenhain. From that point to the Escondido Land Outfall's connections with the San Elijo Joint Powers Authority's effluent pipeline and the San Elijo Ocean Outfall line, the pipeline flows under pressure. This junction of the Escondido Land Outfall and San Elijo Ocean Outfall is located just west of Interstate 5 and just north of the San Elijo Lagoon, adjacent to Manchester Road.  The San Elijo Ocean Outfall traverses the San Elijo Lagoon, crosses under the railroad and Pacific Coast Highway, and extends 8,000 lineal feet into the ocean.

23.    The CITY is settled in a long valley in the coastal mountains of Southern California, in San Diego County's North County region.  The CITY lies about 18 miles inland, 100 miles south of Los Angeles, and 30 miles northeast of downtown San Diego. The population of the CITY was 143,911 in the 2010 census.

24.    The CITY is bisected by Escondido Creek which flows more than 26 miles to meet the Pacific Ocean at San Elijo Lagoon.  Originating at the Lake Wohlford Dam in the northeast, Escondido Creek passes through the downtown area of the CITY and leaves the CITY through the Harmony Grove area in the southwest before eventually emptying into San Elijo Lagoon.  The creek path through the CITY was developed into a concrete flood control channel in the 1960s. The Escondido Creek watershed covers over 75-square miles (more than 54,000 acres) and begins at the upper headwaters in Bear Valley above Lake Wohlford.  The watershed includes Lake Wohlford, Daley Ranch, Dixon

Lake, and the CITY as well as Elijo Lagoon.  Approximately 25 miles of stream along Escondido Creek and its tributaries are protected by conservation easements or through fee-title ownership by public agencies, water districts, and conservation groups.

25.    All of the bodies of water affected by the CITY's SSOs are listed on the California Water Boards list of CWA § 303(d) impaired bodies of water.  San Elijo Lagoon and Estuary is impaired for eutrophic, indicator bacteria, and sedimentation/siltation.  Kit Carson Creek is impaired for pentachlorophenol (PCP) and Total Dissolved Solids. Hodges Lake and Reservoir is impaired for nutrients, color, manganese, mercury, nitrogen, phosphorus, turbidity and pH.  It is believed that some of the impairment is due to the violations of the CWA by the CITY.

## V.    STATUTORY AND REGULATORY BACKGROUND

26.    CWA § 301(a), 33 U.S.C. § 1311(a), prohibits discharges of pollutants or activities not authorized by, or in violation of, an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. Additional sets of regulations are set forth in the RWQCB's Water Quality Control Plan or Basin Plan, the California Toxics Rule, the Code of Federal Regulations, and other regulations promulgated by the EPA and the State Water Resources Control Board. Sewage is specifically identified in the CWA as a pollutant.  The sewer lines and storm water system owned by the CITY are point sources under the CWA.

27.    The affected waterways detailed in this Complaint and in the Notice are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

28.    The Administrator of the EPA has authorized the Regional Water Quality Control Boards to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

29.    The CITY's NPDES Permits include specific "Discharge Prohibitions" and "Receiving Water Limitations" regarding the discharge of pollutants by the CITY into navigable waters of the United States within the meaning of the CWA.

30.     The Code of Federal Regulations Title 40, Section 122.41 (40 C.F.R. § 122.41), includes conditions or provisions that apply to all NPDES permits.   Additional provisions applicable to NPDES permits are found in 40 C.F.R. § 122.42.  All applicable provisions in 40 C.F.R. § 122.41 and 40 C.F.R. § 122.42 are incorporated in the CITY's Facility Permit and MS4 Permit. The CITY must comply with all of the provisions. Pursuant to 40 C.F.R. § 122.41, any permit non-compliance constitutes a violation of the CWA.

## VI.   VIOLATIONS

31.     The CITY's unpermitted discharges of untreated sewage from its sewage collection system, as detailed in this Complaint and in the Notice, are violations of CWA § 301(a), 33 U.S.C. § 1311(a).  The violations are established in the RWQCB's files for the CITY's sewage collection system.

32.     The enumerated violations are detailed in the Notice, incorporated herein by reference and below, designating the sections of the CWA violated by the described activity.

## VII.   FIRST CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) - Violation of NPDES No. Order CA0108944 - Prohibited Discharges.**

33.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 32, including **EXHIBIT A**, as though fully set forth herein.

34.     The CITY  has violated and continues to violate the CWA as evidenced by the discharges of pollutants (raw sewage) from a point source (the sewer lines and storm water sewage collection system) and by collection system discharges caused by underground exfiltration, all to waters of the United States in violation of CWA § 301(a), 33 U.S.C. § 1311(a).

35.     The CITY has self-reported and certified under oath as to SSOs reaching a water of the United States, as evidenced in the CIWQS and in the CITY's own records.  As

listed in CIWQS, the Event ID number of those violations are identified herein and referenced in the Notice.

36.     All discharges identified herein are violations of CWA § 301(a), 33 U.S.C. 1311(a) in that they are discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States without complying with any other sections of the Act.

## VIII.  SECOND CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B)  – Violation of NPDES Order No. CAS0109266 – Failure to Prohibit Non-storm Water Discharges into the MS4 and Watercourses.**

37.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 36, including **EXHIBIT A**, as though fully set forth herein.

38.     The CITY has self-reported and certified under oath as to its non-storm water discharges into the MS4 and waters of the United States, as evidenced in the CIWQS and the records of the CITY.

39.     Sewage is a pollutant under the CWA.  In the EPA's "*Report to Congress on the Impacts and Control of CSOs and SSOs*" (U.S. Environmental Protection Agency, Office of Water (2004)), the EPA determined that SSOs cause a condition of pollution, contamination, or nuisance in receiving waters.

## IX.     THIRD CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) – Violation of NPDES Order No. CAS0109266 – Discharges from the MS4 of Storm Water, or Non-Storm Water, for Which a Permittee Is Responsible, Shall Not Cause or Contribute to a Condition of Nuisance.**

40.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 39, including **EXHIBIT A**, as though fully set forth herein.

41.     As described in this Complaint and in the Notice, the CITY is discharging from its MS4 stormwater and/or non-stormwater which is causing or contributing to a condition of nuisance.

## X.     FOURTH CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B)  – Violation of NPDES Order No. CAS0109266 – Discharges from the MS4 That Cause or Contribute to the Violation of Receiving Water Limitations Are Prohibited.**

42.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 41, including **EXHIBIT A**, as though fully set forth herein.

43.     The CITY has certified under oath as to SSOs that have violated Discharge Prohibitions identified in this Complaint and in the Notice by discharging from its MS4 in such a manner as to cause or contribute to a violation of receiving water limitations.

## XI.    FIFTH CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B)  – Violation of NPDES Order No. CA0108944 – Failure to Comply with Receiving Water Monitoring and Reporting.**

44.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 43, including **EXHIBIT A**, as though fully set forth herein.

45.     RIVER WATCH finds insufficient information in the public record demonstrating the CITY has monitored for and complied with these receiving water standards. RIVER WATCH is understandably concerned regarding the effects of both surface and underground exceedances of the CITY's MS4 Permit limitations to beneficial uses of water applicable to Escondido Creek, the San Elijo Lagoon and Estuary, Kit Carson Creek, and Hodges Lake.

46.     RIVER WATCH contends the violations of the CITY as set forth in the Claims for Relief above are ongoing and will continue after the filing of this Complaint.  RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the

face of the reports or data submitted by the CITY to the RWQCB.  Each of the CITY's violations is a separate violation of the CWA.

47.     RIVER WATCH avers and believes, and on such belief alleges, that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, the CITY will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases.  RIVER WATCH avers and believes, and on such belief alleges, that the relief requested in this Complaint will redress the injury to RIVER WATCH's members, prevent future injury, and protect the interests of RIVER WATCH's members which are or may be adversely affected by the CITY's violations of the CWA, as well as other State and Federal standards.

**XII.   RELIEF REQUESTED**

WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

48.     Declare the CITY to have violated and to be in violation of the CWA.

49.     Issue an injunction ordering the CITY to immediately operate its sewage collection system in compliance with the CWA.

50.     Issue an injunction ordering the CITY to immediately comply with monitoring and reporting requirements in compliance with the CWA.

51.     Order the CITY to perform the following remedial measures:

a.     Determine the specific sewage collection system repairs required, and establish deadlines for compliance;

b.     Implement an effective SSO reporting and response program;

c.     Provide a lateral inspection and repair program;

d.     Ensure application of chemical root control complies with Best Management Practices to avoid release into the environment or exposure to sensitive receptors as well complying with federal EPA, RWQCB, and Cal-OSHA requirements;

e.     Keep the CITY's Sewer System Management Plan up-to-date and properly certified; and

f.      Promote staff training and education.

52.     Order the CITY to pay civil penalties for its violations of the CWA in the amount adjusted by the EPA in 40 C.F.R. Part 19.

53.     Order the CITY to pay reasonable attorneys' fees and costs of RIVER WATCH (including expert witness fees), as provided by CWA § 505(d), 33 U.S.C. § 1365(d).

54.     For such other and further relief as the court deems just and proper.


DATED: July 13, 2018                LAW OFFICE OF JACK SILVER

                                    By:  s/ Jack Silver
                                         Jack Silver
                                         E-mail: jsilverenvironmental@gmail.com


                                    LAW OFFICE OF DAVID WEINSOFF

                                    By:   s/ David J. Weinsoff
                                          David J. Weinsoff
                                          E-mail: david@weinsofflaw.com


                                    Attorneys for Plaintiff
                                    CALIFORNIA RIVER WATCH



# EXHIBIT A

# Law Office of Jack Silver



708 Gravenstein Hwy. North, # 407   Sebastopol, CA 95472-2808
Phone 707-528-8175  Email:  JSilverEnvironmental@gmail.com

**Via Certified Mail –**
**Return Receipt Requested**

January 12, 2018

Mr. Jeffrey R. Epp - City Manager          Mr. Christopher W. McKinney
Members of the City Council               Director of Utilities
City of Escondido                         City of Escondido
201 North Broadway                        201 North Broadway
Escondido, CA 92025                       Escondido, CA 92025

Onsite Manager / Head of Agency
Hale Avenue Resource Recovery Facility
1521 S. Hale Avenue
City of Escondido, CA 92029

**Re:    Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act**
**(Clean Water Act)**

Dear Mr. Epp, Members of the City Council, Mr. McKinney, Onsite Manager and Head of Agency:

**STATUTORY NOTICE**

This Notice is provided on behalf of California River Watch ("River Watch") in regard to violations of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1251 *et seq*., that River Watch alleges are occurring through the ownership and/or operation of the Hale Avenue Resource Recovery Facility ("Facility") and its associated sewer collection system.

River Watch hereby places the City of Escondido ("the City"), as owner and operator of the Facility and associated collection system, on notice that following the expiration of sixty (60) days from the date of this Notice, River Watch will be entitled under CWA § 505(a), 33 U.S.C. § 1365(a), to bring suit in the U.S. District Court against the City for continuing violations of an effluent standard or limitation pursuant to CWA § 301(a), 33 U.S.C. § 1311(a), and the Regional Water Quality Control Board, San Diego Region, Water Quality Control Plan ("Basin Plan"), as the result of violation of Escondido's National Pollutant Discharge Elimination System ("NPDES") Permit.

The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharges of pollutants are prohibited with the exception of enumerated statutory provisions.  One such exception authorizes a discharger, who has been issued a permit pursuant to CWA § 402, 33 U.S.C. § 1342, to discharge designated pollutants at certain levels subject to certain conditions.

Notice of Violations Under CWA - Page 1

The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition such that violation of a permit limit places a discharger in violation of the CWA.  River Watch alleges the City is in violation of the CWA by violating the terms of its NPDES permit.

The CWA provides that the authority to administer the NPDES permitting system in any given state or region can be delegated by the Environmental Protection Agency ("EPA") to a state or to a regional regulatory agency provided that the applicable state or regional regulatory scheme under which the local agency operates satisfies certain criteria (*see* 33 U.S.C. § 1342(b)). In California, the EPA has granted authorization to a state regulatory apparatus comprised of the State Water Resources Control Board ("SWRCB") and several subsidiary regional water quality control boards to issue NPDES permits. The entity responsible for issuing NPDES permit and otherwise regulating the City's operation of the Facility in the region at issue in this Notice is the Regional Water Quality Control Board, San Diego Region ("RWQCB").

While delegating Regional Boards to administer the NPDES permitting system, the CWA provides that enforcement of the statute's permitting requirements relating to effluent standards or limitations imposed by the Regional Boards can be ensured by private parties acting under the citizen suit provision of the statute (*see* CWA § 505, 33 U.S.C. § 1365).  River Watch is exercising such citizen enforcement to enforce compliance by the City with the CWA.

## NOTICE REQUIREMENTS

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the following:

**1.      The Specified Standard, Limitation, or Order Alleged to Have Been Violated**

River Watch contends the order being violated is NPDES Permit No. CA0108944, SWRCB Order No. R9-2015-0026. River Watch has identified specific violations of the City's NPDES permit including raw sewage discharges and the failure to either comply with or provide evidence that the City has complied with the certain terms of its NPDES permits.

**2.      The Activity Alleged to Constitute a Violation**

River Watch contends that from January 12, 2013 to January 12, 2018, the City has violated the Act as described in this Notice.  River Watch contends these violations are continuing or have a likelihood of occurring in the future.

A.      <u>Sanitary Sewer Overflows, Inadequate Reporting, and Failure to Mitigate Impacts</u>

I.      <u>Sanitary Sewer Overflows Occurrence</u>

Sanitary Sewer Overflows ("SSOs"), in which untreated sewage is discharged above ground from the collection system prior to reaching the Facility, are alleged to have occurred both on the dates identified

in California Integrated Water Quality System ("CIWQS") Interactive Public SSO Reports, and on the dates when no reports were filed by the City, all in violation of the CWA.

The City's aging sewer collection system has historically experienced high inflow and infiltration ("I/I") during wet weather.  Structural defects which allow I/I into the sewer lines result in a buildup of pressure, causing SSOs. Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals and storm drains which are connected to adjacent surface waters including Escondido Creek - a water of the United States.

A review of the CIWQS Spill Public Report – Summary Page identifies the "Total Number of SSO locations" as 44, with 329,470 "Total Vol. of SSOs (gal)" discharged into the environment. Of this total volume, the City admits at least 299,897 gallons, or 91% of the total, reached a surface water.  These discharges pose both a nuisance pursuant to California Water Code § 13050(m) and an imminent and substantial endangerment to health and the environment.

Included in the reported SSOs are the following incidents:

• October 15, 2017 (Event ID#840808) – an SSO estimated at 59,331 gallons occurred at Sears Automotive Air Vac as a result of an air relief valve/blow-off valve failure which caused 54,831 gallons of sewage to discharge into Kit Carson Creek.  Of the estimated amount, 4,500 gallons of sewage were recovered.

• June 20, 2015 (Event ID # 815978) – an SSO estimated at 50 gallons occurred at 2415 Eucalyptus caused by a pipe structural problem and/or failure.  None of the sewage was recovered.  All 50 gallons discharged into Lake Hodges via a storm channel.

• March 29, 2013 (Event ID # 793042) – an SSO estimated at 300 gallons occurred at 1487 Industrial Avenue as a result of a water main failure. 250 gallons were reported as recovered and 50 gallons of sewage reached Escondido Creek via a storm drain.

All of the above-identified discharges are violations of CWA § 301(a), 33 U.S.C. § 1311(a), as discharges of a pollutant (sewage) from a point source (sewer collection system) to a water of the United States without complying with any other sections of the Act.  Further, these alleged discharges are violations of the City's NPDES Permit, which establishes a broad and comprehensive set of set of "Discharge Prohibitions" in Section III.A. through Section III.Q.

River Watch contends these violations are continuing in nature or have a likelihood of occurring in the future.

ii.   Inadequate Reporting of Discharges

a.   Incomplete and Inaccurate SSO Reporting

Full and complete reporting of SSOs is essential to gauging their impact upon public health and the environment.  The City's SSO Reports, which should reveal critical details about each of these SSOs, lack

responses to specific questions that would present sufficient information to accurately assess and ensure these violations would not recur.

In addition, River Watch's expert believes many of the SSOs reported by the City as not reaching a surface water did in fact reach surface waters, and those reported as reaching surface waters did so in greater volume than stated. River Watch's expert also believes that a careful reading of the time when the SSO began, the time the City received notification of the SSO, the time of its response, and the time at which the SSO ended, too often appear as unlikely estimations. For example:

- February 27, 2016 (Event ID #822320) – the spill start time and agency notification time are both reported as 07:53 a.m. The operator arrival time and spill end time are not reported. The estimated volume of the spill is reported as 6,790 gallons, all of which is reported as being recovered.

- December 16, 2015 (Event ID #820226) – the spill start time and agency notification time are both reported as 10:30 a.m. The operator arrival time and estimated spill end time are not reported. The estimated total spill volume is estimated at 1,125. Out of the total spill volume, 1,000 gallons are reported as being recovered and 1,125 gallons are reported as reaching land.

- March 13, 2015 (Event ID #813886) – the spill start time is reported as 04:00 p.m. and agency notification time is reported as 04:10 p.m. The operator arrival time and estimated spill end time are not reported. The total spill volume is reported as 300 gallons, 200 gallons of which are reported as being recovered. The remaining 100 gallons are not reported.

Given the unlikely accuracy of the times and intervals provided in these reports, it is difficult to consider the stated volumes as accurate. Many of the City's SSO reports list the spill start and agency notification times as exactly the same time. Without correctly reporting the spill start and end time, there is a danger that the duration and volume of a spill will be underestimated.

b.   Failure to Warn

Although the City posts warning signs for some of its SSOs reaching a surface water, River Watch contends the City is understating the significance of the impacts of its CWA violations by failing to post health warning signs for all SSOs which pose an imminent and substantial endangerment to health or the environment regardless of location.

iii.   Failure to Mitigate Impacts

River Watch contends the City fails to adequately mitigate the impacts of SSOs. The City is a permittee under the Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements Order No. 2006-0003-DWQ, and Waste Discharge Requirements Order No. R-9-2007-0005 ("Waste Discharge Requirements for Sewage Collection Agencies in the San Diego Region") governing the operation of sanitary sewer systems. The two Waste Discharge Requirements Orders require that the City take all feasible steps, and perform necessary remedial actions following the occurrence of an SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of

the wastewater as possible. Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the collection system to prevent further SSOs at the site.

A critical remedial measure is the performance of adequate sampling to determine the nature and impact of the release. As the City is severely underestimating SSOs which reach surface waters, River Watch contends the City is not conducting sampling on most SSOs.

The EPA's "Report to Congress on the Impacts of SSOs" identifies SSOs as a major source of microbial pathogens and oxygen depleting substances. Numerous biological habitat areas exist within areas of the City's SSOs. Neighboring waterways include sensitive areas for the San Diego horned lizard and the California gnatcatcher. River Watch finds no record of the City performing any analysis of the impact of its SSOs on habitat of protected species under the ESA, nor any evaluation of the measures needed to restore water bodies containing biological habitat from the impacts of SSOs.

B.    Sewer Collection System Subsurface Discharges Caused by Underground Exfiltration

It is a well-established fact that exfiltration caused by structural defects in a sewer collection system results in discharges to adjacent surface waters either directly or via underground hydrological connections. Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other systems have verified the contamination of the adjacent waters with untreated sewage.

River Watch contends untreated or partially treated sewage is discharged from the City's sewer collection system either directly or via hydrologically connected groundwater to surface waters including Escondido Creek, the Pacific Ocean, Kit Carson Creek, and Lake Hodges. Due to these SSOs, surface waters become contaminated with pollutants including human pathogens. Chronic failures in the sewer collection system pose a substantial threat to public health.

Evidence of exfiltration can also be supported by reviewing mass balance data, I/I data, video inspection, as well as tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine. Any exfiltration found from the City's sewer collection system is a violation of its NPDES permits and thus a violation of the CWA.

C.    Effluent Limitation Violations

The City's aquatic environment has many beneficial uses as defined in the RWQCB Basin Plan. Discharges in excess of receiving water and groundwater limitations reaching these waters cause prohibited pollution by unreasonably affecting beneficial uses. The coastal waters of the Pacific Ocean, as well as Escondido Creek, the San Elijo Lagoon and estuary, Kit Carson Creek, and Hodges Lake contain many sensitive species and support important recreational values. Receiving water limitations are based on water quality objectives contained in the RWQCB Basin Plan and the California Ocean Plan, and are incorporated by reference into NPDES Permit No. CA0108944.

In order to protect beneficial uses, the City must insure that its discharges do no violate the following receiving water standards for Escondido Creek:

1. **Bacterial Characteristics**
   a. Total Coliform Organisms: Total coliform organisms concentration shall not exceed the following:
      I. 1,000 MPN/100 mL geometric mean, based on a minimum of not less than five samples for any 30-day period; and
      ii. 10,000 MPN/100 mL at any time.

   b. Fecal Coliform: Effluent Fecal Coliform organisms concentration shall not exceed the following:
      I. 200 MPN/100 mL geometric mean, based on a minimum of not less than five samples for any 30-day period or one sample per discharge event; and
      ii. 400 MPN/100 mL for more than 10 percent of the total samples during any 30-day period.

   c. Enterococci: Effluent Enterococci concentration shall not exceed the following:
      I. 33 MPN/100 mL geometric mean, based on all samples during a 30-day period; and
      ii. 61 MPN/100 mL at any time.

2. **Chemical Characteristics**
   a. The dissolved oxygen concentration shall not at any time be less than 6 mg/L. The annual mean dissolved oxygen concentration shall not be less than 7 mg/L more than 10% of the time.
   b. Changes in normal ambient pH levels shall not exceed 0.5 units. The pH shall not be depressed below 6.5 or raised above 8.5.
   c. Concentrations of nitrogen and phosphorus, by themselves or in combination with other nutrients, shall be maintained at levels below those which stimulate algae and emergent plant growth.
   d. The discharge of wastes shall not cause concentrations of un-ionized ammonia ($NH_3$) to exceed 0.025 mg/L as N.

3. **Color**
   Water shall be free of coloration that causes nuisance or adversely affects beneficial uses. The natural color of fish, shellfish, or other resources shall not be impaired.

4. **Floating Material**
   Waters shall not contain floating material, including solids, liquids, foams, and scum in concentrations which cause nuisance or adversely affect beneficial uses.

5. **Oil and Grease**
   Waters shall not contain oils, greases, waxes, or other materials in concentrations which result in a visible film or coating on the surface of the water or on objects in the water, or which cause nuisance or otherwise adversely affect beneficial uses.

6.      **Radioactivity**
        Radionuclides shall not be present in concentrations that are harmful/deleterious to human, plant, animal, or aquatic life nor that result in the accumulation of radionuclides in the food web to an extent that presents a hazard to human, plant, animal, or aquatic life.

7.      **Suspended Sediments**
        The suspended sediment load and suspended sediment discharge rate of surface waters shall not be altered in such a manner as to cause nuisance or adversely affect beneficial uses.

8.      **Suspended and Settleable Solids**
        Waters shall not contain suspended and settleable solids in concentrations of solids that cause nuisance or adversely affect beneficial uses.

9.      **Taste and Odors**
        Waters shall not contain taste or odor producing substances at concentrations which cause a nuisance or adversely affect beneficial uses.

10.     **Temperature**
        The natural receiving water temperature of intrastate waters shall not be altered unless it can be demonstrated to the satisfaction of the San Diego Water Board that such alteration in temperature does not adversely affect beneficial uses. At no time or place shall the temperature of any waters with designated cold freshwater habitat be increased more than 5°F above the natural receiving water temperature.

11.     **Toxic Substances**
        All waters shall be maintained free of toxic substances in concentrations that are toxic to, or that produce detrimental physiological responses in human, plant, animal, or aquatic life. Compliance will be determined by use of indicator organisms, analysis of species diversity, population density, growth anomalies, bioassays of appropriate duration, or other appropriate methods, as specified by the San Diego Water Board.

12.     **Turbidity**
        Waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses.

River Watch finds insufficient information in the public record demonstrating the City has monitored for and complied with these receiving water standards. River Watch is understandably concerned regarding the effects of both surface and underground exceedances of the City's NPDES Permit limitations to beneficial uses applicable to the Pacific Ocean as well as to Escondido Creek, the San Elijo Lagoon and estuary, Kit Carson Creek and Hodges Lake.

**3.      The Person or Persons Responsible for the Alleged Violation**

The entity responsible for the alleged violations identified in this Notice is the City of Escondido, as owner and operator of the Hale Avenue Resource Recovery Facility and its associated sewer collection

system, as well as those of the City's employees responsible for compliance for the CWA and with any applicable state and federal regulations and permits.

**4.       The Location of the Alleged Violation**

The City's sewer collection system includes the wastewater collection system and the Escondido Land Outfall pipeline carrying effluent from the Hale Avenue Resource Recovery Facility located at 1521 South Hale Avenue to the San Elijo Ocean Outfall.

The City's sewer collection system consists of approximately 380 miles of pipeline, 7,530 manholes, and 14 pump stations. The system serves an estimated population of 146,000. The collection system delivers wastewater to the Facility. With minor exceptions, the collection system serves only properties within the incorporated boundaries of the City. The Facility is a conventional activated sludge secondary treatment plant. The Facility's biosolids are digested, dewatered with three centrifuges, hauled to a private farm, and land applied as soil amendment. The Facility's effluent is released to the Escondido Land Outfall for delivery, and discharged to the San Elijo Ocean Outfall. An equalization basin is available to equalize peak flows.

The Escondido Land Outfall is a 14.3-mile-long pipeline with varying internal diameters from 30" to 36". The pipeline operates under gravity flow conditions from the Facility, roughly paralleling Escondido Creek, to a point near Lone Jack Road in Olivenhain. From that point to the Escondido Land Outfall's connections with the San Elijo Joint Powers Authority's effluent pipeline and the San Elijo Ocean Outfall line, the pipeline flows under pressure. This junction of the Escondido Land Outfall and San Elijo Ocean Outfall is located just west of Interstate 5 and just north of the San Elijo Lagoon, adjacent to Manchester Road.  The San Elijo Ocean Outfall traverses the San Elijo Lagoon, crosses under the railroad and Pacific Coast Highway and extends 8,000 lineal feet into the ocean. The City is located in a long valley in the coastal mountains of Southern California, in San Diego County's North County region, with a total area of 37.0 square miles, 0.2 square miles or 0.48% of which is water.  It lies about 18 miles inland, 100 miles south of Los Angeles, and 30 miles northeast of downtown San Diego.  The population was 143,911 in the 2010 census.

The City is bisected by Escondido Creek which flows more than 26 miles to meet the Pacific Ocean at San Elijo Lagoon.  Originating at the Lake Wohlford Dam in the northeast, Escondido Creek passes through the downtown area of the City and leaves through the Harmony Grove area in the southwest before eventually emptying into San Elijo Lagoon.  The creek path through the City was developed into a concrete flood control channel in the 1960s.  Escondido Creek watershed covers over 75-square miles beginning at the upper headwaters in Bear Valley above Lake Wohlford.  The watershed includes Lake Wohlford, Daley Ranch, Dixon Lake, and Elijo Lagoon.  Approximately 25 miles of stream along Escondido Creek and its tributaries are protected by conservation easements or through fee-title ownership by public agencies, water districts, and conservation groups.

All of the water bodes affected by the City's SSOs are listed on the California Water Boards as CWA Section 303(d) impaired bodies of water.  San Elijo Lagoon and estuary is impaired for eutrophic, indicator bacteria and sedimentation/siltation.  Kit Carson Creek is impaired for pentachlorophenol (PCP) and Total Dissolved Solids.  Hodges Lake and Reservoir is impaired for color, manganese, mercury, nitrogen, phosphorus, turbidity and pH.

The location or locations of the various violations alleged in this Notice are identified in records created and/or maintained by or for the City which relate to its ownership and operation of the Facility and associated sewer collection system as described in this Notice.

**5.      Reasonable Range of Dates During Which the Alleged Activity Occurred**

The range of dates covered by this Notice is January 12, 2013 through January 12, 2018. This Notice also includes all violations of the CWA by the City which occur during and after this Notice period up to and including the time of trial.

**6.      The Full Name, Address, and Telephone Number of the Person Giving Notice**

The entity giving notice is California River Watch, referred to throughout this notice as "River Watch," an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation duly organized under the laws of the State of California.  Its headquarters and main office are located in Sebastopol.  Its mailing address is 290 South Main Street, #817, Sebastopol, CA 95472. River Watch is dedicated to protecting, enhancing, and helping to restore surface waters and ground waters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, and educating the public concerning environmental issues associated with these environs.

River Watch may be contacted via email: US@ncriverwatch.org, or through its attorneys.  River Watch has retained legal counsel with respect to the issues raised in this Notice.  All communications should be directed to counsel identified below:

Jack Silver, Esq.                                      David J. Weinsoff, Esq.
Law Office of Jack Silver                        Law Office of David J. Weinsoff
708 Gravenstein Highway North, #407     138 Ridgeway Avenue
Sebastopol, CA 95472                             Fairfax, CA 94930
Tel. 707-528-8175                                   Tel. 415-460-9760
Email: JsilverEnvironmental@gmail.com   Email: david@weinsofflaw.com

**RECOMMENDED REMEDIAL MEASURES**

River Watch looks forward to meeting with City staff to tailor remedial measures to the specific operation of the Facility and associated sewer collection system.  In advance of that conversation, River Watch identifies the following issues for discussion that will advance compliance with the CWA and the Basin Plan, and help economize the time and effort the parties need to resolve their concerns:

- Determining the specific sewer collection system repairs required, and establishing deadlines for compliance;
- Requiring implementation of an effective SSO reporting and response program;
- Providing a lateral inspection and repair program;
- Ensuring application of chemical root control complies with federal EPA or the RWQCB as well as manufacturer and Cal-OSHA requirements;
- Keeping the Sewer System Management Plan (SSMP) up-to-date and properly certified; and
- Promoting staff training and education.

Notice of Violations Under CWA - Page 9

## CONCLUSION

The violations set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected community.  Members of River Watch may use the affected watershed for recreation, fishing, hiking, photography, nature walks and the like.  Their health, use, and enjoyment of this natural resource may be specifically impaired by the City's alleged violations of the CWA as set forth in this Notice.

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including a governmental instrumentality or agency, for violations of NPDES permit requirements and for un-permitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5).  An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).  Violators of the Act are also subject to an assessment of civil penalties of up to $53,484.00 per day/per violation pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365.  *See also* 40 C.F.R. §§ 19.1 – 19.4.  River Watch believes this Notice sufficiently states grounds for filing suit in federal court under the "citizen suit" provisions of CWA to obtain the relief provided for under the law.

The CWA specifically provides a **60-day** "notice period" to promote resolution of disputes.  River Watch strongly encourages the City to contact counsel for River Watch within **twenty (20)** days of receipt of this Notice to initiate a discussion regarding the allegations detailed herein.  In the absence of productive discussions to resolve this dispute, River Watch will have cause to file a citizen's suit under CWA § 505(a) when the 60-day notice period ends.

Very truly yours,

Jack Silver

JS:lhm

## Service List

Scott Pruitt. Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N. W.
Washington, D.C. 20460

Alexis Strauss, Acting Regional Administrator
U.S. Environmental Protection Agency
Pacific Southwest, Region 9
75 Hawthorne Street
San Francisco, CA 94105

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Michael R. McGuinness, Esq.
Office of the City Attorney
City of Escondido
201 N. Broadway
Escondido, CA 92025