UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH, an IRC Section 501(c)(3), non-profit, public benefit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ESCONDIDO,<br><br>Defendant. | Case No.: 3:18-CV-01635-AJB-JMA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Doc. No. 7)** |

Presently before the Court is Defendant City of Escondido's ("Defendant") motion to dismiss Plaintiff California River Watch's ("River Watch") First Amended Complaint ("FAC"). (Doc. No. 7.) Plaintiff opposes the motion. (Doc. No. 8.) For the reasons set forth more clearly below, the Court **DENIES** Defendant's motion to dismiss.

## I. BACKGROUND

River Watch is a non-profit, public benefit corporation located in Sebastopol, California. (Doc. No. 3 ¶ 6.) River Watch is "dedicated to protecting, enhancing, and helping to restore surface water and groundwaters of California including coastal waters, rivers, creeks, streams, wetlands … and educating the public concerning environmental issues associated with these [bodies of water]." (*Id.*) Members of River Watch use the

waters for recreational activities. (*Id*.) River Watch contends that its members' use of the waters has been hindered as a result of Defendant's actions. (*Id*.) The law giving rise to River Watch's claims is the Clean Water Act ("CWA"), 33 U.S.C. § 1251. (Doc. No. 3 at 1.) The CWA regulates pollutant discharges and delineates exceptions to the prohibition on pollutant discharges. (Doc. No. 3 ¶ 8; 33 U.S.C. § 1311.) Furthermore, the CWA can issue National Pollutant Discharge Elimination System ("NPDES") permits, which define the scope and limitations in which entities could discharge pollutants into United States waters. (Doc. No. 3 ¶ 8; 33 U.S.C. § 1342(a).)

In California, the Environmental Protection Agency ("EPA") has given the authority to grant NPDES permits "to a state regulatory apparatus comprised of the State Water Resources Control Board and several subsidiary regional water quality control boards." (Doc. No. 3 ¶ 9.) In the City of Escondido, the Regional Water Quality Control Board, San Diego Region ("RWQCB") is responsible for issuing NPDES permits. (*Id*.) River Watch contends Defendant violated its NPDES Permit No. CA0108944 issued by the State, which states in pertinent part:

- Discharges of wastes in a manner or to a location which have not been specifically authorized and for which valid WDRs [Waste Discharge Requirements] are not in force is prohibited. (*see* Section III.B. "Discharge Prohibitions").
- The bypass or overflow of untreated wastewater or wastes to surface waters or surface water drainage courses is prohibited, except as allowed in Standard Provision I.G. of Attachment D, Standard Provisions (*see* Section III.D. "Discharge Prohibitions").

(*Id*. ¶ 12.) Specifically, River Watch alleges the violations stemmed from the City's improper discharges in its sewer collection system and municipal storm sewer system. (*Id*. ¶ 13.) River Watch claims Defendant's violations took place over a period of five years, beginning on January 12, 2013 to January 12, 2018. (*Id*.) Moreover, River Watch believes there is a strong likelihood the violations will continue in the future. (*Id*.)

River Watch compartmentalizes the Defendant's alleged violations into two parts: (1) collection system discharges caused by underground exfiltration; and (2) collection

system surface discharges caused by sanitary sewer overflows (SSOs). (*Id.* ¶¶ 13(a)–(b).) As to the first part, River Watch claims "it is a well-established fact that exfiltration caused by pipeline cracks and other structural defects in a sewage collection system result in discharges to adjacent surface waters via underground hydrological connections." (*Id.* ¶ 13(a).) Consequently, structural defects in the Defendant's sewage system resulted in discharges to Escondido Creek, Kit Carson Creek, San Elijo Lagoon and Estuary, and Lake Hodges – United States waters. (*Id.* ¶¶ 13(a), 14.) Secondly, River Watch asserts SSOs, which occur when untreated sewage is discharged above ground, further supports the claims the Defendant violated its NPDES permits and, as a result, the CWA. (*Id.* ¶ 13(b).)

As a result of the alleged violations, River Watch brings a citizens' suit for declaratory and injunctive relief, pursuant to the CWA. 33 U.S.C. § 1251. However, before a suit can be initiated, the CWA requires plaintiffs to provide the defendant with a 60-day notice of intent to file suit. 33 U.S.C. § 1365(b)(1)(A).

River Watch provided Defendant with the notice on January 12, 2018 and filed this suit on July 24, 2018. (Doc. No. 3 at 15, 17.) Details regarding each notice requirement will be discussed herein. Defendant brings its motion to dismiss on two grounds: (1) River Watch's 60-day notice is insufficient; and (2) River Watch's FAC fails to state a claim upon which relief can be granted. (Doc. No. 7-1 at 4, 8.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Even more, "[w]hile a

3

3:18-CV-01635-AJB-JMA

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Moreover, "a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert denied*, 454 U.S. 1031 (1981)).

### III. DISCUSSION

A. River Watch's Notice of Violations and Intent to File Suit Under the CWA

Defendant's motion hinges upon the deficiency of River Watch's Notice. Accordingly, the Court finds it instructive to provide pertinent parts of the Notice here.

> ***a. Specific Standard, Limitation, or Order Alleged to Have Been Violated***
> River Watch contends the order being violated is NPDES Permit No. CA0108944, SWRCB Order No. R9-2015-0026. (Doc. No. 3 at 18.)
>
> ***b. Activity Alleged to Constitute a Violation***
> I. <u>Sanitary Sewer Overflows Occurrence</u>
> A review of the CIWQS Spill Public Report – Summary Page identifies the "Total Number of SSO locations" as 44, with 329,470 "Total Vol. of SSOs (gal)" discharged into the

environment. Included in the reported SSOs are the following incidents:

- October 15, 2017 (Event ID # 840808) – an SSO estimated at 59,331 gallons occurred at Sears Automotive Air Vac as a result of an air relief valve/blow-off valve failure which caused 54,831 gallons of sewage to discharge into Kit Carson Creek. Of the estimated amount, 4,500 gallons of sewage were recovered.
- June 20, 2015 (Event ID # 815978) – an SSO estimated at 50 gallons occurred at 2415 Eucalyptus caused by a pipe structural problem and/or failure. None of the sewage was recovered. All 50 gallons discharged into Lake Hodges via a storm channel.
- March 29, 2013 (Event ID # 793042) – an SSO estimated at 300 gallons occurred at 1487 Industrial Avenue as a result of a water main failure. 250 gallons were reported as recovered and 50 gallons of sewage reached Escondido Creek via a storm drain.

(*Id*. at 19.)

II. Inadequate Reporting of Discharges

River Watch's expert. . .believes that a careful reading of the time when the SSO began, the time the City received notification of the SSO, the time of its response, and the time at which the SSO ended, too often appear as unlikely estimations. For example:

- February 27, 2016 (Event ID # 822320) – the spill start time and agency notification time are both reported as 07:53 a.m. The operator arrival time and spill end time are not reported. The estimated volume of the spill is reported as 6,790 gallons, all of which is reported as being recovered.
- December 16, 2015 (Event ID # 8202260) – the spill start time and agency notification time are both reported as 10:30 a.m. The operator arrival time and estimated spill end time are not reported. The estimated total spill volume is estimated at 1,125. Out of the total spill volume, 1,000 gallons are reported as being recovered and 1,125 gallons are reported as reaching land.
- March 13, 2015 (Event ID # 813886) – the spill start time is reported as 4:00 p.m. and agency notification time is reported as 4:10 p.m. The operator arrival time and estimated spill end time are not reported. The total spill volume is reported as 300 gallons, 200 gallons of which are reported as being recovered. The remaining 100 gallons are not reported.

(*Id*. at 20.)

### III. Failure to Mitigate Impacts

River Watch contends the City fails to adequately mitigate the impacts of SSOs. The City is a permittee under the Statewide General Requirements for Sanitary Sewer Systems, Water Discharge Requirements Order No. 2006-0003-DWQ, and Waste Discharge Requirements Order No. R-9-2007-0005 ... governing the operation of sanitary sewer systems. The two Waste Discharge Requirements Orders require the city to take all feasible steps, and perform necessary remedial actions following the occurrence of an SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible.

(*Id*. at 20–21.)

### c. *Person or Persons Responsible for the Alleged Violation*

The entity responsible for the alleged violations identified in this Notice is the City of Escondido, as owner and operator of the Hale Avenue Resource Recovery Facility and its associated sewer collection system, as well as those of the City's employees responsible for compliance for the CWA and with any applicable state and federal regulations and permits.

(*Id*. at 23–24.)

### d. *Location of the Alleged Violation*

The City's sewer collection system includes the wastewater collection system and the Escondido Land Outfall pipeline carrying effluent from the Hale Avenue Resource Recovery Facility located at 1521 South Hale Avenue to the San Elijo Ocean Outfall ... All of the water bodes affected by the City's SSOs are listed on the California Water Boards as CWA Section 303(d) impaired bodies of water. San Elijo Lagoon and estuary is impaired for eutrophic, indicator bacteria and sedimentation/siltation. Kit Carson Creek is impaired for pentracholorophenol (PCP) and Total Dissolved Solids. Hodges Lake and Reservoir is impaired for color, manganese, mercury, nitrogen, phosphorus, turbidity and pH.

(*Id*. at 24.)

### e. *Date or Dates of Such Violation*

The range of dates covered by this Notice is January 12, 2013 through January 12, 2018. This Notice also includes all

> violations of the CWA by the City which occur during and after this Notice period up to and including the time of trial.
> (*Id*. at 25.)

> ### f. Full Name, Address, and Telephone Number of the Person Giving Notice
> The entity giving notice is California River Watch ... Its headquarters and main office are located in Sebastopol. Its mailing address is 290 South Main Street, #817, Sebastopol, CA 95472.
> (*Id*.)

B. <u>Sufficiency of River Watch's Notice</u>

A citizen's suit for violations of the Clean Water Act ("CWA") can be brought for declaratory of injunctive relief. 33 U.S.C. § 1251. Pursuant to the CWA, plaintiffs must provide defendants with a 60-day notice of intent to file suit. 33 U.S.C. § 1365(b)(1)(A). As mentioned above, federal regulations provide that the notice must contain the following details: (1) the specific standard, limitation, or order alleged to have been violated; (2) the activity alleged to constitute a violation; (3) the person or persons responsible for the alleged violation; (4) the location of the alleged violation; (5) the date or dates of such violation; and (6) the full name, address, telephone number of the person giving notice. 40 C.F.R. § 135.3(a).

The Court will not analyze at length the issue of whether River Watch complied with the 60-day notice requirement. River Watch sent Defendant the Notice on January 12, 2018 and did not file suit in this Court until July 24, 2018. (Doc. No. 3 at 15, 17.) Accordingly, the 60-day notice requirement was met.

Defendant compartmentalizes its challenge to River Watch's Notice into three parts: (1) underground exfiltration; (2) failure to comply with effluent limitations; and (3) unidentified sanitary sewer overflows (SSOs). (Doc. No. 7-1 at 5–7.) Within each section, Defendant claims River Watch failed to provide "(1) the specific activity of the City which resulted in the alleged violations, (2) the location of the alleged violations, or (3) the date or dates of such alleged violations." (*Id*.) The Court will first address Defendant's

contentions regarding underground exfiltration and failure to comply with effluent limitations.

   *1. Allegations of Sanitary Sewer Overflows*

Here, Defendant's contentions hinge on the time period in which River Watch claims sanitary sewer overflows (SSOs) occurred. (Doc. No. 7 at 6.) The Ninth Circuit has held where allegations of unlawful discharge provide a range of dates, notice is still sufficient. *San Francisco Baykeeper v. Tosco*, 309 F.3d 1153, 1158–59 (9th Cir. 2000). Plaintiffs are not required to list every single violation with their respective dates, especially when defendants are in a better position to ascertain the dates of their own misconduct. *Id.*; *Friends of Frederick Seig Grove #94 v. Sonoma Cnty. Water Agency*, 124 F. Supp. 2d 1161, 1169 (N.D. Cal. 2000) (*Friends of Frederick Seig Grove*). As a matter of policy, courts have held:

> [R]equiring a plaintiff to specifically list all of the alleged violations and the precise dates of each violation in a notice letter is inconsistent with the balance Congress sought to strike between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with a flood of citizen suits. . . .[P]lacing such a burden on prospective plaintiffs would excessively undermine citizen suits and discourage alleged violators from complying with the CWA or entering into settlement discussions with plaintiffs.

*Friends of Frederick Seig Grove*, 124 F. Supp. 2d at 1169. As stated herein, a notice is sufficient when it provides defendants enough detail to identify the violations and to subsequently remedy the violations. *San Francisco Baykeeper*, 791 F. Supp. 2d at 753.

Here, River Watch's Notice claims "[a] review of [California Integrated Water Quality System] Spill Public Report – Summary Page identifies the 'Total Number of SSO locations' as 44." (Doc. No. 3 at 19.) Furthermore, the Court has delineated in detail above, the SSO incidents dated October 15, 2017; June 20, 2015; and March 29, 2013. (*Id.*) The Court finds it instructive that these three incidents alone occurred in a period spanning four years. Moreover, River Watch's review of the Spill Public Report demonstrated 44 SSOs,

which presumably would have occurred within the five-year period alleged. Accordingly, the Court is reluctant to support the Defendant's argument that the five-year period River Watch alleges is too broad. The Court finds River Watch provided Defendant with enough notice of alleged violations and with ample detail to bring itself into compliance with the CWA.

Thus, the Court **DENIES** Defendants' motion to dismiss the claims of violations of the CWA with respect to sanitary sewer overflows.

   *2. Allegations of Underground Exfiltration and Failure to Comply with Effluent Limitations*

It is well-settled in the Ninth Circuit that the CWA's notice regulation "does not require that plaintiffs 'list every specific aspect or detail of every alleged violation.'" *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 753 (N.D. Cal. 2011) (citing *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002)). Plaintiffs are not required to list every single violation with their respective dates, especially when defendants are in a better position to ascertain the dates of their own misconduct. *San Francisco Baykeeper*, 309 F.3d at 1158–59; *Friends of Frederick Seig Grove*, 124 F. Supp. 2d at 1169. However, plaintiffs must not provide defendants with a notice so deficient of detail that defendants would not be able to identify alleged violations and, subsequently, remedy the violations. *San Francisco Baykeeper*, 791 F. Supp. 2d at 753.

Here, Defendants contend River Watch's Notice regarding the allegations of underground exfiltration and effluent limitations are deficient. (Doc. No. 7-1 at 5, 7.) Taking into consideration the six notice requirements mentioned herein, the Court believes River Watch has provided sufficient notice as to these two allegations. Plaintiff identifies these two allegations as supporting concerns. (Doc. No. 8 at 12.) River Watch has provided sufficient information for Defendants to determine the nature, location and exact dates of the alleged discharges via exfiltration. In regard to the effluent limitations, River Watch has alleged that Defendants provide no evidence in its electronically filed self-monitoring

reports that it complies with the receiving water limitations in its permit. (Doc. No. 8 at 15.) River Watch has alleged that "[r]eceiving water limitations are based on water quality objectives contained in the RWQCB Basin Plan and the California Ocean Plan, and are incorporated by reference into NPDES Permit No. CA 0108944." (Doc. No. 3 at 21.) This again is sufficient notice for Defendants to determine the violations.

Accordingly, the Court **DENIES** Defendant's motion to dismiss the claims of violations of the CWA with respect to underground exfiltration and effluent limitations.

C. Whether River Watch's FAC States a Claim upon which Relief Can Be Granted

Defendant contends River Watch's FAC merely provides conclusory allegations and does not give factual support for its CWA claims. (Doc. No. 7-1 at 8.) To reiterate, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Furthermore, factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

Here, River Watch's FAC provides specific details regarding the Defendant's NPDES permits, "Event IDs" of twenty-six violations between 2013 through 2018, and details regarding three of those violations. (Doc. No. 3 at 5–7.) Accordingly, the Court finds River Watch has met the threshold requirements in *Twombly* and *Iqbal* to provide enough facts to state a claim for relief. Notwithstanding, the Court is of the opinion that River Watch's relief should be limited to the violations of sanitary sewer overflows.

Therefore, the Court **DENIES** Defendant's motion to dismiss River Watch's claim for injunctive relief, civil penalties, and declaratory relief.

D. Defendant's Request for Judicial Notice

Pursuant to Rule 201, a court may take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known" under Rule 201(b)(1) or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" under Rule 201(b)(2). *Id*. If the parties dispute the facts contained in the documents, "the Court takes judicial notice only of the statements

contained," but not for the truth of the matters asserted. *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1122 (N.D. Cal. 2017) (citations omitted); *see also City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1108 (E.D. Wash. 2013), *aff'd*, 691 F. App'x 393 (9th Cir. 2017) (court found it unnecessary to consider the truthfulness of judicially noticeable documents in a defendant's motion to dismiss). Further, evidence of "conduct or a statement made during compromise negotiations" is inadmissible. Fed. R. Evid. 408(a).

Defendant's motion requests judicial notice of three communications between the parties and, more specifically, regarding more details about River Watch's January 12, 2018 Notice. (Doc. Nos. 7-3, 7-4, 7-5, 9 at 8.) River Watch contends it is unclear what adjudicative facts for which Defendant is seeking judicial notice. (Doc. No. 8 at 15.) The Court agrees. The three communications between the parties are in dispute. These communications are not generally known, nor can the Court make an accurate and ready determination as to the accuracy. Further, if these communications were in fact used as an offer of compromise, these are inadmissible. As such, the Court finds the contents of the letters to contain facts subject to reasonable dispute. Thus, the Court **DENIES** Defendant's request for judicial notice.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss. (Doc. No. 7.)

**IT IS SO ORDERED.**

Dated: March 29, 2019

Hon. Anthony J. Battaglia
United States District Judge